Case number 20-1002 David Felten et al. v. William Beaumont Hospital et al. Argument not to exceed 15 minutes per side. Ms. Julie Keaton Bracker, you may proceed for the appellant. Thank you. May it please the court, my name is Julie Bracker and I represent the appellant Dr. David Felten in this matter. On behalf of Dr. Felten and others similarly situated, I ask this court to find that the meaning of employee in 31 U.S.C. 3737H is temporally ambiguous and should be construed broadly enough to reach acts by a former employer that affects a former employee's terms and conditions of employment by preventing that employee from obtaining further employment. More simply put, we ask the court to find that the anti-retaliation provision of the False Claims Act includes a cause of action for blacklisting. Even when that termination of the relator's employment period with the fraud phaser. To reach this conclusion, the court must first grapple with whether there's ambiguity in the statute's use of the term employee. This is an important step because without concluding that the word is ambiguous, the court is not permitted to consider congressional intent, the legislative history of the act, or even the effect that a narrow or broad definition of employee will have on the act's ability to serve its remedial purpose. Appley offers a seductively simple alternative to grappling with any of these issues. It asks that consistent with the Tenth Circuit decision in Potts, this court simply conclude the term is not ambiguous. Instead, Appley urges the court to consider how the word might be used in a marketing campaign, for example, and to find that unless the word former is expressly appended, then the term employee implies a current employee. But colloquially... Counsel, you're giving up. You're giving up on the argument that it's not ambiguous and yet covers former employees. I think that a definition that was not ambiguous and covered former employees, it is difficult to see how a layman's use of the term employee would not would not either provoke the question a current employee or would in fact be assumed to be a current employee. Well, I'm focusing on the words threatened and harassed. Couldn't that apply to both a former and a present employee? Absolutely, your honor. So why isn't that unambiguous? What about this makes it ambiguous? The fact that in colloquial usage, the term employee is often used to refer to a current employee. Although I do, I do think that... But in Robinson, there was the use of the word employee and I think the Supreme Court said it was unambiguous that it applied to former employees. Or did they in that case say it was ambiguous? They concluded first, your honor, that it was ambiguous. Okay. Fair enough. They looked at the three prongs to determine what the ambiguity... First, whether it was ambiguous and then how, given that it was ambiguous, it should be interpreted in the context of Title VII. Okay. Once we... Certainly, if this court wishes to find that the term unambiguously includes former employees, appellant has no objection. But should the court reach the question of ambiguity, then we feel that it's very clear, even Potts gives very limited attention to Robinson, only addressing the decision in the last few paragraphs of the opinion. The Robinson court says that in order to determine whether or not the term is ambiguous, that the court should look first at the language of the statute itself, which this court has Statutory construction begins with the text of the statute. Then the court looks to the specific context in which the term is used. And then the court looks to the broader context of the statute itself. The Potts court focused only on this middle prong. The Potts court ignored the fact that, for example, under the terms of the statute itself, the word does not say, as we just discussed, ways that could have made this completely unambiguous and plain would have been to say current and former employees have a right to sue or to be made whole. The statute could have said during the employment period and put a limit around it in that way. The statute could have had a definition, a statutory definition section that included employee or any of the terms at issue in the prohibited conduct. But Congress didn't do any of those things. So under the first prong of whether the specific language of the statute itself is ambiguous, we have to say yes. The Potts court found a temporal limitation in the list of this in the specific context of the provision. So let's talk about that. Entitle an employee to be made whole if the employee is demoted, suspended, threatened, harassed, or in any manner discriminated against in the terms and conditions of employment. So Potts focused right here entirely and went to statutory construction canons and said that under, I'm going to butcher my Latin now with my apologies, under nosciter satiae, associated words bear one another's meanings, and under estudium generis, where general words follow an enumeration, they apply to the same category or class. Well, I would ask this court to first ask itself why do we need to go to statutory canons of construction if this is clear? If this is not itself ambiguous, the canons of construction are used to resolve ambiguity. This is an ambiguous provision at best, and even Potts's court focus on the statutory canons imply as much. Secondly, there are other canons of construction, as is typically the case with such canons. For example, a canon of construction called the surplusage canon. Every word needs to be given an effect, and the Potts court reasoned that because termination, demotion, and suspension could only happen to current employees, then we should limit the other terms to also current employees. But this doesn't give full effect to those terms. It doesn't explain why Congress included terms that could in fact be temporally unlimited, or rather, temporally could apply as well to former employees. And I want also to talk about the fact, just briefly, that if courts in good faith, and our briefing covers courts across the spectrum that have found this to be ambiguous or not ambiguous to cover former employees and not cover former employees, doesn't the split of only provision on which the Potts court hangs its hat? It also ignores the third prong, and this one pretty much ignores it entirely, which is the broader context of the statute as a whole. So just as in Potts, and many other cases that follow that line of reasoning say that you cannot discharge a former employee, so it implicitly applies only to a current employee, you cannot reinstate a former employee. Excuse me, I knew I would do that. You cannot reinstate a current employee. So the word is clearly used in both temporal meanings within this broader statute as a whole. Admittedly, the False Claims Act is considerably shorter in length than Title VII, but even within the much more limited statutory text of the False Claims Act, we can see that word used as is typical for words like employer, employee, landlord, and tenant, lessor and lessee, that state a legal relationship. Were I to be in a dispute with my landlord, then even if my tenancy had ended, I would still be referred to as the lessee or the tenant. The fact that I am now the former tenant would not really be material to analyzing the effect of that legal relationship. And that is what the Potts decision ignores. Once the court has concluded that this term is ambiguous, under the Robinson analysis, it next should turn to the broader statutory framework and the effect on the remedial purpose if the word is construed narrowly. But this court doesn't even have to go into that analysis because we have extremely clear legislative history, unusually so, in which the introduction of the act stated that the purpose of the 2009 FARA amendments was to broaden the scope of coverage and protection for whistleblowers under the False Claims Act to specifically bring in blacklisted employees. And given that clear stated will of Congress, there's no reason to even go into that further analysis. Should the court engage in that analysis, it's also clear that there would be a great detrimental effect to the remedial purpose of the statute if the court were to narrow application of the protections to only current employees. I represent only relators. A relator who came to me having already been terminated for internally reporting the fraud would have no protection and no incentive to file a False Claims Act case and report fraud on the government if there's no protection for such employees for retaliation. Similarly, an employee who's a current employee but fears that they'll be terminated shortly, unless we think we can get that case filed before they're terminated, they would be in great danger. So what we ask the court... I'll ask you quickly about the facts of the case. So Mr. Felton made his reports while he was still an employee? Yes, your honor. Did he make more reports after he was fired? No, your honor. He served... May I finish the response? It's longer than the two seconds, but... Sure, sure. If you're indulging. Dr. Felton filed his False Claims Act in 2010. Beaumont discovered he was the relator in 2011 and his employment did not terminate until the end of 2013. So during that time, the case was under seal and when he tried to interview for other positions, Beaumont was able to, under the assumed as true allegations of our case, Beaumont was able to blacklist Dr. Felton and because of the seal, he wasn't even able to defend himself. Okay, so all of Dr. Felton's acts occurred prior to his being terminated and he's suing as to acts of Beaumont that occurred after he was terminated? Yes, your honor. The blacklisting began and continued. And the allegation is that the post-termination acts of Beaumont relate back to his pre-termination acts of relating? We asked this court to find that if he had left Beaumont's employment without ever having been terminated or discovered as a whistleblower, but upon discovering that, Beaumont began to blacklist him in his industry, that that would be an act of retaliation independently of whether he had been previously terminated, whether he had been previously suffered any of the prohibited conduct. But my understanding is the facts are that Beaumont knew of his acts before he was terminated, correct? That's correct. Okay, so all of the acts occurred pre-termination when he was an employee. All of his acts occurred pre-termination when he was an employee. Yes, your honor. Okay. All right, Ms. Bracker, you're out of time, but you've got five minutes rebuttal. You could use it now or you could save it. I'll reserve it for rebuttal. All right, any further questions at this time? Judge McKeague? Judge Bush? All right, you'll have your five minutes rebuttal. All right, let's hear from counsel for the FLE. Good morning. Counselor, you're muted. I'm sorry. Good morning, everyone. My name is Mike Turco. I represent William Beaumont Hospital, the FLE. We are asking the court to affirm what the trial court decided. The trial court got it right here when Judge Murphy decided that the False Claims Act, specifically Section 3730H, does not apply to conduct that occurs after the employment relationship ends. In making that decision, he actually followed an analytical rubric that's very similar to what this court has already applied in looking at who is a proper plaintiff under the False Claims Act. In Vanderbilt, you looked at this issue, and I actually agree with opposing counsel here that if the statute is unambiguous, you don't go beyond the language of the statute. In fact, borrowing from your own prior opinion, if the statute is unambiguous, the inquiry begins and ends with the language that was actually used. That was very sound analysis that this court applied because it's built on the cardinal rule that Congress means what they say, and they say what they mean. Importantly, in this case, and in fact, in responding to you, Judge Bush, Dr. Felton quarrels with whether the statute means what they want it to say, and they argue that it's ambiguous. I would respectfully suggest that that's contrary to what this court has already decided when it was asked to look at who is a proper plaintiff under the statute in Vanderbilt. In Vanderbilt, you looked at and applied the plain and ordinary meaning of the statute to determine that it did not apply to a prospective employee. Although the issue here is a little different, in my mind, I think of it as Vanderbilt involved the important question of who is a proper plaintiff. Here, what Dr. Felton is teasing out is the issue of what is the conduct that he complains of actionable under the statute. It's a different issue, but the same discipline in interpreting the statute applies. I guess what's tripping me up here is the Robinson case. As I had clarified in my initial questioning, Robinson found that the term employee was ambiguous under Title VII. Is that your reading of Robinson? It is, Your Honor. Okay, and now you're arguing employee in the FCA is unambiguous. What was it in Robinson that made employee ambiguous for Title VII that's not present here that would also make employee ambiguous for FCA? Okay, two points, Your Honor. Number one, I will address your question directly, but I just want to make the important observation that Robinson had been decided at the time Vanderbilt was decided. As I'm sure you already know, importantly, this court did not look to Robinson to help define Vanderbilt. This court decided independently without considering the rubric in Robinson that the statute was unambiguous. But if today you were to say, well, we're going to go back and look at that and we're going to consider whether Robinson applies, I would respectfully suggest to the court that it doesn't. And the reason it doesn't is because it's a very different statutory animal. In Title VII, Justice Thomas pointed out initially in his opinion that employee seems to be an unambiguous term, and it should end the inquiry. But the reason he went further is because in that statute, there is no temporal limitation to the term employee. It was simply defined as employment of another. And Justice Thomas said that could mean current employee of another or former employee of another. And the reason he got there is because other provisions of the statute. But for example, if he were to read it as current employees only, then the section of the statute in 2000E subsection three would have a very different connotation. The only thing prohibited in 2000E3 is discrimination. It says that it's unlawful employment practice for an employer to discriminate against his employees. That is the only prohibited verb used to describe the conduct. And so Justice Thomas wrestled with the issue of how do I give meaning to that if it doesn't apply to somebody after they're no longer an employee? You have a different statutory mechanism to work with here. In our case, Congress did give you much more connotation or much more context, excuse me, than simply the word discriminate. They provided this court with the benefit of a statute that lists prescriptive activity that on its face applies to somebody who suffers retaliation during the term of their employment. For example, recognizing we have to give each of these words meaning. For Justice Thomas wrestled with does discriminate apply to somebody during or after employment? You have very clear verbs in discharged, demoted, suspended. I realize the list goes on. But Justice Thomas- But you stopped it before you got to threaten or harass, which could be like the discrimination term in Title VII, couldn't it? That it could apply to both former or present employees? Justice Thomas- It could, Your Honor, if the statute didn't say what it says. And I don't mean that in any way to sound like I'm trying to be cute with you. But the statute has specific verbs that are listed. And we are supposed to use the associated word canon to read them to all mean the same thing. And all of those verbs tie out to the important clarification of in the terms and conditions of employment, which only means something if you're talking about affecting somebody's ongoing employment. And that's- But in the Potts case, the Potts case seemed to say that in the terms of conditions of employment only modified the last point, not everything in the statute. And I don't mean that in any way to sound like I'm trying to be cute with you. But-  Justice Breyer- It is. But importantly, that wasn't the basis for its opinion. The basis for its opinion was that the other verbs that talk about the prescriptive conduct necessarily apply during the course of the employment relationship. They did find that. But very importantly, in answering the question of whether it should apply or Congress intended for these words to mean that it applies to a former employee, I would ask, please, that you also consider this issue by looking at subsection two of the statute. Subsection one, 3730H1, talks about the two important questions, who and what. Who is a proper plaintiff and what is an employer prohibited from doing? To the extent you're wrestling with whether or not that only applies to current employees, we believe that subsection two very clearly answers your question. Because here in section two, Congress tells you, and what do we do about it? If it happens, then what? And subsection two talks about types of relief that very clearly apply if somebody suffers harassment during the term of their employment. And in order for you to get to the question that Dr. Felton is asking and start walking down this legislative history and other analysis that he's asking you to consider, I respectfully suggest you have to ignore the express language of the statute before you. Doesn't that provision say it includes this type of relief, but it doesn't say that this type of relief is exclusive to what you can get under the statute? You're right. That is what it says. And here, Your Honor, what I'm informed by is the fact that we have to look at what Congress did provide us and glean meaning from the words that they used. And it's very important to note that they only use examples that apply to somebody who is a current employee at the time they suffer the retaliation. I'd like to pivot, if I may, to an important issue in this case, which has to do with Dr. Felton's representation that he represents a group of similarly situated people and the policy notion that if you don't decide this case the way he's asking, you leave a group of people without remedy. A few very important points of clarification that I'm sure you already know from the record. Number one, Dr. Felton does have a pending claim for conduct that occurred during the course of his employment. He has alleged that the hospital cut his budget in half and required him to meet the same performance output. That claim is still pending. That's a perfect example of what falls under the rubric of the statute. It's conduct that he claims is retaliatory. It occurred during the course of his do all of his other claims relate back? The answer to that question is no, they do not. The district court has already decided that they do not. What we're arguing about here is a separate bundle of alleged conduct that only occurred after he was no longer an employee. And that's not just my argument. Starting at page 3044 of the trial court record, Judge Murphy outlines his analysis here and explains why the claims don't relate back. So Dr. Felton does not represent a group of unprotected people. Number one, there are separate statutory sections that apply to relators and provide a remedy for somebody, even if they were to bring a claim after they're no longer an employee. Second, Dr. Felton had the opportunity to pursue a constructive discharge claim, which also would fall under this statute. But for strategic reasons that I don't know, he chose not to pursue that within the time the statute provided. He represents a very unique group of people where the statute definitely protects employees, agents, and contractors who claim to suffer retaliation during the term of their employment. So Beaumont, I realize I have more time, but I'm not just going to take it. Our position is as straightforward as I'm trying to suggest. This court has looked at the statute before and determined that the words mean what they say and it's unambiguous. If you follow that same process here, we believe you will appropriately come to the conclusion that the trial court reach that was reached in the Potts case by the 10th Circuit. Although I realize it's not binding precedent on you, I do think it's very important analysis that helps show this court in Vanderbilt was on the right path and made the right decision. And your decision here would actually fall in line with what a majority of courts have considered this issue had decided. So what we are asking the court to do is affirm the trial court, uphold the decision that says 3730H1, I'm sorry, 3730H does not apply to Vanderbilt. So again, I realize I have more time, but that doesn't mean I have to use it unless any of you have any questions of me. Any further questions? Judge McKeague, Judge Bush. All right, thank you, Mr. Turco. Ms. Bracker, you've got five minutes rebuttal. Thank you, Your Honor. With respect to the Vanderbilt decision, appellant agrees that the court made a consistent, made the appropriate decision in Vanderbilt. Vanderbilt presented the question of whether a prospective employee, also known as an applicant, fell within the protection of the statute. In order to determine whether an applicant is some form of employee within the legal understanding of that relationship requires, as the court said, no peculiar reading. There is no need to go beyond the plain language of the statute to see that Congress did not intend that the pool of would be therefore protected under the False Claims Act. It's therefore completely consistent for this court to rule that an applicant is not an employee without reference to anything else. And yet, in having to determine the temporal limitation of whether that term includes both former and current employees, that this court would need to proceed through the Robinson analysis. The fact that the court didn't need to refer to Robinson to determine that an applicant is not an employee is hardly dispositive of whether former employees can be brought into the realm of the same statute. With respect to the term discrimination... Ms. Bracker, it seems like Vanderbilt, the alleged actions of the prospective employee didn't occur during the employment itself because they were never employed, right? That's correct, Your Honor. Whereas here, your client's actions did occur during the employment. So, isn't that an obvious distinction with Vanderbilt? It is an obvious distinction with Potts. In the Potts case, in the facts of Potts, we see that the relator there was never a relator at all, left her employment, under what terms, I don't know, left her employment with the defendant, signed a non-disparagement agreement, and then sent emails complaining about the behavior of the defendant. The defendant found out and the defendant sued her for breach of non-disparagement provisions. At that point, as a defense, she raised the protections of the False Claims Act. Having never been a relator, having never engaged in protective conduct under the statute, having never brought any of this course of conduct within the realm of her employment at all, the Potts court found that the actions complained of did not fall within the protection of the statute. There are any number of protections and limitations on the anti-retaliation provisions protections that are available to a defendant without finding that no post-termination retaliation is actionable. And that's where the Potts court overstepped and swept too broadly. As your Honor, Judge Bush noted earlier, under the analysis of Potts, Potts just rules of construction, the word discrimination, just as in Title VII, is found within the same provision that we're examining here. Discharged, demoted, threatened, suspended, harassed, or in any other manner discriminated against in the terms and conditions of employment. There's a limit there, terms and conditions of employment. There is also an explanation there. All of these are before and after the period of employment. Does it matter, counsel, that the statute actually uses the word is rather than was? That it says that an employee is entitled to relief if the employee is discharged, demoted, suspended, threatened, harassed, rather than was. Doesn't the word is indicate that it was during the period of employment that there's a cause of action rather than was? Respectfully, no, your Honor. I think that is refers to no cause of action springs forth until that has actually occurred. So once that has occurred, then the employee is entitled to be made whole. And that made whole provision, that made whole language, informs everything that comes afterwards in H-2. But counsel suggested that that was a limited amount of remediation. This is a make whole statute. And that's why it's so important that federal whistleblowers have a federal protection consistent through all of the circuits for acts of retaliation that occur against them. To suggest that Dr. Felton doesn't represent a class of perhaps appealing, but not accurate, as to suggest that Vanderbilt found that for all time, the word employee is unambiguous. Dr. Felton represents people who, for whatever reason, are discriminated against after the time that they leave and not able to have to earn a livelihood. I think my time is up. All right. Any further questions? Judge McKeague? Judge Bush? All right. Well, thank you for your arguments, counsel. The case will be submitted.